Chambers of Edgardo Ramos

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC # _____
DATE FILED: July 1, 2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

– *against* –

DAIQUAN HENDERSON,

Defendant.

**ORDER**

12 Cr. 214 (ER)

RAMOS, D.J.:

Daiquan Henderson ("Henderson") is currently serving a sentence of 120 months' imprisonment at Federal Correctional Institution ("FCI") Beaumont Medium[1], a medium security prison in Texas, and is scheduled to finish his sentence on August 25, 2021.  Before the Court now is his application, proceeding *pro se*, for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), seeking reduction of sentence to "time served," or early release to home confinement.  Doc. 512.  The Government opposes the application.  Doc. 514.  For the reasons set forth below, Henderson's application is DENIED without prejudice and subject to renewal when either his administrative remedies have been exhausted or 30 days have lapsed from the receipt of his compassionate release request by the warden of his facility.

I. **BACKGROUND**[2]

According to his pre-sentence report ("PSR"), Henderson was a member of the Strip Boyz, a violent drug trafficking organization that sold crack and marijuana near Yonkers' William A Schlobohm Houses.  Gov't Opp'n, Doc. 514, at 2.  The Strip Boyz engaged in a long-

---

[1] As of June 30, 2020, there are no confirmed, active cases of COVID-19 among inmates at FCI Beaumont Medium, though the facility has reported six infected staff.  *See* https://www.bop.gov/coronavirus/index.jsp (last visited, June 30, 2020).

[2] The facts recounted here are taken from the parties' briefing for this motion, Docs. 512, and 514.  Any citation incorporates the documents cited therein.

running feud with rival Yonkers gangs over drug territory and other issues. *Id*. It involved

shootings, stabbings, and beatings of rival rang members. *Id*. Specifically, Henderson sold

crack and other drugs and carried a gun as a part of his drug dealing. *Id*.

On June 20, 2012, a grand jury in this district returned Superseding Indictment S1 12 Cr.

214 (ER) (the "Indictment"), charging Henderson and nineteen co-defendants with conspiring to

distribute more than 280 grams of crack cocaine, and more than 50 kilograms of marijuana, from

2001 to June 2012, in violation of Title 21, United States Code, Section 846. *Id*. at 1. The

Indictment further charged Henderson and ten of his co-defendants with the use of firearms

during and in relation to that narcotics conspiracy, in violation of 18 U.S.C. § 924(c) and 2. *Id*.

The Indictment was unsealed on June 26, 2012. *Id*. at 1–2. On May 23, 2013, Henderson pled

guilty pursuant to a plea agreement to lesser included offenses of counts one and two of the

Indictment—a (b)(1)(B) conspiracy and possession of a firearm, respectively.[3] *Id*. at 2.

On February 5, 2014, this Court sentenced Henderson to the mandatory minimum of 120

months' imprisonment. *Id*. When imposing sentence, the Court pointed out that Henderson had

participated in "a very serious offense that took place over a period of years and that involved

violence and the use of guns." *Id*. On the other hand, the Court also considered Henderson's

past addictions and the circumstances of his upbringing, noting that they "really border[ed] on

tragic" and "contributed mightily to [his] involvement in these offenses." *Id*. After weighing

these and other factors, this Court determined that a mandatory-minimum sentence of 120

months' imprisonment was appropriate. *Id*.

On June 24, 2020, Henderson filed the instant application with this Court. Doc. 512. In

his application, Henderson argued that his medical conditions including moderate to severe

---

[3] The Government is not seeking enforcement of a provision in Henderson's plea agreement regarding a waiver of the right to seek a modification of his sentence pursuant to § 3582(c).

asthma and obesity, coupled with the fact that it is impossible to maintain social distancing at his facility, constitute "extraordinary and compelling circumstances" that qualify him for compassionate release. *Id*. at 1.  According to Henderson, if released, he will live with his brother who "never did crime" and his brother's two sons, and is able to support himself and his family. *Id*.

Although Henderson claims that he wrote an electronic request to the warden asking him for an early release due to the Coronavirus pandemic, his application does not include any documentation of that request or any details of when it was filed.[4]  *Id*.  Furthermore, the Bureau of Prison (the "BOP") advised that as of June 25, 2020, the warden of Henderson's facility had not received any such request from him.  Doc. 514 at 4.

## II.   DISCUSSION

Although a court may not normally "modify a term of imprisonment once it has been imposed," there are certain limited exceptions, including compassionate release.  *See United States v. Roberts*, No. 18 Cr. 528, 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020) (citing 18 U.S.C. § 3582 (c)(1)(A)).  A court may reduce a prisoner's sentence when it finds there are extraordinary and compelling reasons that warrant such a reduction, but one of two conditions must first occur.  § 3582 (c)(1)(A)(i).  First, and most simply, the Director of the BOP may move the court to release the prisoner.  § 3582 (c)(1)(A).  Second, the prisoner himself may move the court, but only after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *Id*.

---

[4] In his application, Henderson points out that the "BOP Administrative Remedy Program is nowhere near a speedy process and could take up to 6–8 months to get a[n] answer" for his request.  *Id*.

Here, the warden of Henderson's facility asserts that he had not received Henderson's compassionate release request as of June 25, 2020, seven days from the date of this Order, so thirty days could not have passed from the receipt of such a request.  In addition, Henderson does not argue that he has exhausted his administrative remedies.  To the extent that Henderson argues that the § 3582(c)(1)(A)'s exhaustion requirement should be excused under the exceptional circumstances presented by COVID-19, the Court will not do so.  Although judge-made exhaustion requirements may be waived by a judge absent statutory authority, exhaustion requirements created by Congress almost always may not.  *See Ross v. Blake*, 136 S.Ct. 1850, 1857 (2016).  This is because when Congress acts, "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to."  *Id*.; *see also Bastek v. Fed. Crop Ins.*, 145 F.3d 90, 94 (2d Cir. 1998) ("Faced with unambiguous statutory language requiring exhaustion of administrative remedies, we are not free to rewrite the statutory text.").  While the Court is certainly mindful of the serious concerns presented by COVID-19 in a confined environment, the statute's exhaustion requirement is mandatory.  *See United States v. Demaria*, No. 17 Cr. 569 (ER), 2020 WL 1888910, at *4 (S.D.N.Y. Apr. 16, 2020) (collecting cases).  Congress has mandated that a prisoner may only bring a compassionate release motion on his own behalf after exhaustion or the passage of 30 days.  The plain language of the statute does not give this Court any flexibility in allowing waiver.

Indeed, both the Third and Sixth Circuit Courts of Appeals have recently held that strict compliance with the statutory exhaustion requirement is necessary.  The Third Circuit recognized the serious concerns presented by COVID-19, but nevertheless concluded that, in light of the BOP's statutory role, its extensive efforts to curtail the virus's spread, and its shared desire for a safe and healthy prison environment, "strict compliance with § 3582(c)(1)(A)'s

4

exhaustion requirement takes on added [] and critical [] importance." *See United States v. Raia*, 954 F.3d 594 (3d Cir. 2020). The Sixth Circuit agreed. *See United States v. Alam*, No. 20-1298 (6th Cir. June 2, 2020).

As for Henderson's concern that it could take six or eight months to get an answer from the BOP on a compassionate release, that concern[5] is alleviated by § 3582's alternative to exhaustion of all administrative rights, namely, the lapse of 30 days from the warden's receipt of the inmate's request for compassionate release. 18 U.S.C. § 3582(c)(1)(A). To be sure, COVID-19 presents unusual circumstances, in which compassionate release decisions should be made expeditiously. However, as the Third and Sixth Circuit recognized, the mandatory exhaustion requirement accommodates the valuable role that the BOP plays in the compassionate release process. Informed decisions about compassionate release require the collection of information, like disciplinary records and medical history, which the BOP is uniquely suited to obtain and which will benefit evaluation of compassionate release applications. As the Sixth Circuit observed in *Alam*, "[s]peed matters…[b]ut accuracy matters too." Slip op. at 6–7.

---

[5] Based on the Court's own experience in handling compassionate release requests, the BOP has generally acted swiftly in responding to such requests, usually providing an answer within a month if not sooner.

III.   **CONCLUSION**

For the aforementioned reasons, Henderson's application for compassionate release is DENIED without prejudice.  He may refile his application once 30 days have passed from the date he submitted his request to FCI Beaumont Medium or once he has exhausted his administrative remedies.  In the event that he does, he shall provide the Court with a copy of his petition or request to the BOP and the response(s), if any, provided by the BOP.  Henderson is further directed to submit with any such application documentation detailing his medical condition and the risk such condition poses with respect to contracting and surviving COVID-19. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 512.

It is SO ORDERED.

Dated:    July 1, 2020
          New York, New York

_____
          Edgardo Ramos, U.S.D.J.